UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANERGY SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>EOS AUSTRALIA PTY LTD,<br><br>Defendant. | Case No. 23-cv-06228-NW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE**<br><br>Re: ECF Nos. 50, 64, 81, 92 |

On January 27, 2025, Defendant EOS Australia PTY, LTD ("EOS") moved for summary judgment on Plaintiff Quanergy Solutions, Inc.'s ("Quanergy") claims. Defendant's Mot. for Summary Judgment, ECF No. 50 ("EOS MSJ"). On February 14, 2025, Quanergy filed an opposition and simultaneously filed a cross-motion for partial summary judgment. Plaintiff's Mot. for Summary Judgment and Opp'n to EOS MSJ, ECF No. 64 ("Quanergy MSJ"). The parties filed respective oppositions and replies to the cross-motions for summary judgment. ECF Nos. 73, 76.

On March 20, 2025, EOS filed a motion to strike Quanergy's reply to Quanergy's cross-motion for partial summary judgment. EOS Mot. to Strike, ECF No. 81. On June 27, 2025, EOS additionally filed a motion to exclude testimony of two of Quanergy's experts. EOS Mot. to Exclude, ECF No. 92. Quanergy opposed both motions, and EOS filed replies.

Having considered the parties' briefing, the relevant legal authority, and the arguments put forth by counsel at the August 27, 2025 hearing, the Court GRANTS in part and DENIES in part

Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion for summary judgment. The Court DENIES Defendant's motion to strike and DENIES Defendant's motion to exclude.

## I.   BACKGROUND

Quanergy is a Delaware corporation with its principal place of business in San Jose, California. Compl. ¶ 1, ECF No. 1. Quanergy is a manufacturer of LiDAR sensors and related proprietary products, technology, materials and software. *Id*. ¶ 9. EOS is an Australian electronics security distribution company with its principal place of business in Auburn, Australia. Answer ¶ 2, ECF No. 18. The parties do not contest that the Court has personal jurisdiction over Defendant and subject matter jurisdiction over Plaintiff's claims. Compl. ¶¶ 3-7; *see generally* EOS MSJ.

This dispute arises out of a distributor agreement between Quanergy's predecessor, Quanergy OldCo., and EOS. The following facts are undisputed.[1]

### A.   Distributor Agreement

Effective March 15, 2022, Quanergy OldCo. and EOS entered into an agreement appointing EOS as Quanergy OldCo.'s non-exclusive distributor and reseller of Quanergy OldCo's products in Australia and New Zealand. Compl. ¶ 11, Ex. A ("Distributor Agreement" or "Agreement"). The Agreement was for a term of three years commencing on March 15, 2022, ending on March 14, 2025, and states that it "shall automatically renew for additional one-year periods ("Renewal Term"), unless either Party provides a written notice of non-renewal not less than sixty (60) days prior to the expiration of the Initial Term or Renewal Term, as the case may be." Distributor Agreement, § 8.1. The parties agree, and counsel confirmed at the hearing, that the Distributor Agreement is the only agreement governing the relationship between the parties.

The Distributor Agreement sets forth the terms of EOS's appointment as a distributor and required EOS to "use its best efforts to market, promote, sell, and support" the Quanergy OldCo.

---

[1] The Court relies only on undisputed facts: facts that both parties cited in their respective motions, exhibits that both parties filed along with declarations, and the Distributor Agreement (which both parties submitted).

products. Section 2.1, titled "Appointment," states:

> **2.1 Appointment.** Subject to the terms and conditions of this Agreement, including, but not limited to, the Distributor Terms set forth in Exhibit A, Quanergy hereby appoints Distributor, for the Term of this Agreement as a limited and non-exclusive Distributor for the resale of the Products and SLKs to Customers within the Territory. During the Term of this Agreement, Distributor shall use its best efforts to market, promote, sell, and support the Products and SLKs for its Customers throughout the Territory. Distributor shall not resell any Products and SLKs directly to End Users. Distributor shall not sell any Products or SLKs to Customers located outside the Territory or to Customers for resale to End Users that are located outside the Territory. Distributor shall resell Products and Software solely in the Market Segment specified in Exhibit A.

*Id.*, § 2.1.

The Distributor Agreement sets out the conditions for EOS's appointment as a Distributor.

Among the various "Obligations" is a "Minimum Volume Commitment":

> **2.2 Obligations**. Distributor's appointment as a Distributor is conditioned on Distributor meeting and complying with the following obligations throughout the Term: (a) Distributor must purchase a minimum number of Products during the Term (the "**Minimum Volume Commitment**") as set forth in Exhibit A; (b) Distributor must ensure that all Customers that purchase Products agree to be bound by terms and conditions no less protective of Quanergy than the terms and conditions of this Agreement, prior to shipping any Products or providing any SLKs to such Customers; (c) Distributor will not resell or attempt to resell any Products or SLKs to any direct competitor of Quanergy; and (d) Distributor will not distribute, publish or disclose any Product or Software specifications or pricing in any publicly available collateral, materials, or website or with any third party, except for disclosures that in each case are to Customers that have been reviewed and qualified by Distributor. If Distributor fails to comply with any of the foregoing obligations, Quanergy shall be entitled to terminate this Agreement immediately upon written notice to Distributor. Without limiting the foregoing, Distributor must ensure that all sales of Products to Distributors' Customers include terms and conditions set forth in Sections 3, 11, 12, and 13.

*Id.*, § 2.2.

Paragraph six of Exhibit A to the Agreement addresses the Minimum Volume Commitment. *Id.*, Ex. A. It states: "Distributor agrees to order a minimum of product, software and service worth $800,000 USD from Quanergy during the Initial Term of this Agreement. Further, the Distributor agrees to the annual Minimum Purchase Commitment set forth below during each year of the Initial Term." *Id*. This language is followed by a chart:

3

| Year | Annual Value (USD) | Cumulative (USD) |
|---|---|---|
| 1 | $150,000 | $150,000 |
| 2 | $250,000 | $400,000 |
| 3 | $400,000 | $800,000 |

*Id.* The last sentence of paragraph six states: "The annual Minimum Purchase Commitment during each Renewal Term is $800,000 USD." *Id.*

When the relevant provisions of the Agreement are read collectively (sections 2.2, 8.1, and paragraph 6 of Exhibit A), it is clear that the "Distributor's appointment as a Distributor is conditioned on Distributor meeting and complying" with the terms of the Agreement. This includes the Minimum Volume Commitment set forth in the chart above, for years one through three of the initial term, and $800,000 for each one-year renewal period, if any, that the Agreement is automatically renewed.

The Distributor Agreement sets forth the terms for EOS to issue a purchase order and for Quanergy to accept a purchase order. Section 3.1 states:

> **3.1 Orders.** Distributor shall purchase Products for resale by issuing a Purchase Order . . . Quanergy reserves the right to reject any orders at its sole discretion. Orders are not accepted, until Quanergy sends Distributor a written order of acceptance or actually delivers the ordered Products provided that delivery constitutes acceptance only to the extent Quanergy actually delivers the Products.

*Id.*, § 3.1.

The Distributor Agreement further outlines the "sales support," and "advertising, marketing and promotion" requirements for EOS, as well as the anticipated "joint marketing activities" between the parties. *Id.*, §§ 2.5, 2.12, 2.13, 7. The Agreement lays out the intellectual property licenses provided to EOS and corresponding restrictions as well. *Id.*, § 5.

4

The "Termination" provision lays out grounds, which are different for each of the parties, for termination of the Agreement:

> **8.2 Termination.** This Agreement may be terminated by either Party for a material breach by the other Party that is not cured within thirty (30) days of written notice to the other Party. In addition, Quanergy may terminate this Agreement immediately upon written notice if Distributor:
>
> (a) breaches or threatens to breach the obligations in Section 2.2 and/or Section 10 or otherwise violates any Quanergy policies;
>
> (b) Distributor engages in any unlawful or unfair business practice;
>
> (c) there is a material change in or transfer of Distributor's management, ownership, control or business operations, or Distributor becomes affiliated, through common management, ownership, or control, with any person or entity that is unacceptable to Quanergy;
>
> (d) Distributor's actions expose or threaten to expose Quanergy to any liability, obligation, or violation of law;
>
> (e) Distributor's use of the Quanergy Marks in breach of the Quanergy trademark and branding guidelines or in any manner that threatens to harm the goodwill of Quanergy, as it determines in its sole discretion;
>
> (f) Distributor fails to maintain sufficient net worth and working capital to meet its obligations, has a receiver or trustee appointed for its property, becomes insolvent or makes an assignment for the benefit of creditors; or
>
> (g) Distributor fails to purchase the Minimum Volume Requirements set forth in Exhibit A and fails to cure such failure within thirty (30) days after receipt of written notice thereof from Quanergy.

*Id.*, § 8.2.

### B. September 2022 Purchase Order

On September 30, 2022, EOS sent a purchase order by email to Quanergy OldCo. for "50 MQ-8 POEUltra sensors at a price of $299,598 and 50 perpetual software licenses for the sensors at a price of $117,300 for a total order of $416,898." EOS MSJ at 4 ("Purchase Order"). EOS included a note along with its Purchase Order saying, "Please see my PO [purchase order] and let me know if everything is okay. For shipping the items, I will inform you when we require them." Decl. of Christine Park, ¶ 4, Ex. 3, ECF No. 55-3 ("Park Decl.").

Later the same day, Quanergy OldCo. replied to EOS's email, stating, "Received with thanks. We will issue a corresponding SO [sales order] which will require a signature due to the

quantum." Park Decl., Ex. 5. Following this exchange, through the date of this Order, Quanergy OldCo. never shared a signed sales order with EOS.

### C. Subsequent Correspondence

On December 12, 2022, Quanergy OldCo. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Quanergy MSJ at 2. On approximately January 15, 2023, EOS emailed Quanergy OldCo. to "cancel" the Purchase Order that Quanergy OldCo. had never accepted. Park Decl., Ex. 7 ("January 2023 Email"). EOS wrote to Quanergy OldCo.:

> Please be informed that we would like to cancel the backlog PO of 50x MQ-8 Ultra POE sensors.
>
> The backlog PO of 50x MQ-8 POE Ultra was agreed across the duration of 16 months. Unfortunately as Quanergy recently filed for Chapter 11 to facilitate the sale of the business and assets, we are not confident in future business moving forward.
>
> However, until we have certainty in the auction/sale outcome, EOS will still continue to promote and quote the Quanergy solution to our system integrators within the electronic security market.

*Id*. At the hearing, counsel for both parties confirmed that following the January 2023 Email, months passed without written correspondence between the parties.

On February 3, 2023, Plaintiff Quanergy acquired Quanergy OldCo.'s tangible and intangible assets. "Upon closing, Plaintiff acquired the Quanergy name, took over operations and hired many team members from Quanergy OldCo." Quanergy MSJ at 3.

Approximately eight months after EOS's prior correspondence, Quanergy reached out to EOS by email about the Purchase Order. Decl. of Enzo Signore, ¶ 17, Ex. 6, ECF No. 68-6 ("Signore Decl.").[2] On August 16, 2023, EOS replied, "You may be unaware however we have cancelled this PO as advised to Marc Lamy [Quanergy OldCo. employee] on Monday 16th January this year. I have attached my original cancellation email to Marc, we cannot move forward with this PO." *Id*. A few minutes later, Quanergy responded, "As specified in Quanergy

---

[2] The parties have not produced this initial email from Quanergy; they have only shared EOS's response and Quanergy's subsequent message.

6

Terms and Conditions,[3] all orders are NCNR, and must be delivered within 12 months of PO date." *Id*.

On November 7, 2023, Quanergy's counsel sent a demand letter to EOS, asking for reasonable assurance of performance of the Purchase Order and Distributor Agreement. Signore Decl., Ex. 11.

Quanergy initiated this suit against EOS on December 1, 2023. Quanergy asserts five claims: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and (5) unjust enrichment. As part of its breach of contract claim, Quanergy alleges three theories of breach: (i) EOS did not adhere to its obligation under the Purchase Order and, as a result, refused to adhere to its additional obligations under the Distributor Agreement, such as the Minimum Volume Commitment; (ii) EOS breached the Distributor Agreement by selling, distributing, and promoting competing products without express written consent of Quanergy while the Distributor Agreement was still in place; and (iii) EOS breached the Distributor Agreement by not using its best efforts to market and sell Quanergy's products. Compl. ¶¶ 60, 62, 74.

EOS answered the complaint on January 18, 2024. ECF No. 18. EOS asserted 22 affirmative defenses to Quanergy's claims, including, unclean hands, failure to mitigate, and contributory fault.

**II.     LEGAL STANDARD**

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue of material fact exists if there is sufficient evidence such that a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The Court

---

[3] The Court is not aware of a separate "Terms and Conditions," and understands Quanergy to be referencing the Distributor Agreement.

7

may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, and conclusory assertions will not suffice. *See Anderson*, 477 U.S. at 252; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id*.

**III.   DISCUSSION**

Both parties agree that California law applies to this dispute. *See* Distributor Agreement, § 15.8 (the terms of the Agreement shall be governed by California law).

EOS moves for summary judgment on all Quanergy's claims. EOS asserts that Quanergy's breach of contract claim fails because the Purchase Order was not a binding agreement, and EOS did not have an obligation to purchase the Minimum Volume Commitment in the Distributor Agreement. EOS further contends that it terminated the Distributor Agreement in their January 2023 Email. EOS's arguments on Quanergy's remaining claims draw on these assertions.

Quanergy moves for partial summary judgment as to its breach of contract claim and EOS's affirmative defenses. In its cross-motion, Quanergy leads with arguments that "there is no genuine dispute of material fact that Defendant breached the Parties' Distributor Agreement by

8

failing to purchase the minimum volume of products." Quanergy MSJ at 2.  Additionally, Quanergy maintains that EOS failed to submit evidence in support of its affirmative defenses.

The factual record in this case is limited.  The parties were engaged in an active business relationship for less than two years, and the parties filed substantially overlapping exhibits with their respective declarations.  The parties do not challenge the validity of the few emails exchanged between them, only how the communications should be construed.  While the Court considers each cross-motion for summary judgment on its own merits, as it must, the Court addresses the parties' arguments and evidence collectively because "the evidence submitted in support of each cross-motion" substantially overlaps.  *See Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### A.     Threshold Issues Underlying Plaintiff's Claims

Both motions raise three threshold questions: (1) whether the Distributor Agreement should be construed as a distributor agreement or a sales agreement; (2) whether the Purchase Order was a valid agreement between the parties; and (3) whether the Distributor Agreement has been terminated.

The Court finds that the first two threshold issues, which are related, are suitable for summary judgment; they require interpretations of law and contract language, and there is no dispute of fact.  The Court GRANTS summary judgment in favor of EOS on the first two threshold issues.  The Court finds that the third threshold question is not appropriate for summary judgment because there is a material dispute of fact, and the Court DENIES summary judgment on the third threshold issue accordingly.

#### 1.     Whether the Distributor Agreement is a Sales Contract

Quanergy's complaint and cross-motion for summary judgment are grounded in its assertion that the Parties' Distributor Agreement is a sales contract that required EOS to purchase the Minimum Volume Commitment of $800,000.00 of products during the original term of the Agreement, meaning between March 15, 2022 and March 15, 2025.  Quanergy frames its arguments about the contractual relationship between the parties around the Minimum Volume Commitment.  At the hearing, Quanergy argued that the Court should find that EOS was required

9

to purchase the Minimum Volume Commitment because the Distributor Agreement was a "reseller" agreement or a sales contract that obligated EOS to purchase $800,000.00 of Quanergy's products during the original contract term.

EOS does not dispute that it failed to order the Minimum Volume Commitment of products. EOS argues that the Minimum Volume Commitment is instead "merely a condition upon which EOS would maintain its status as a distributor." EOS MSJ at 8. EOS asserts that therefore, Quanergy's only remedy for EOS's failure to order the Minimum Volume Commitment of products is termination of the Distributor Agreement.

The Court agrees. The Court need only look to the plain language of the Distributor Agreement to find that the Minimum Volume Commitment was a condition for EOS's continued status as a Quanergy distributor. "The courts' superseding objective when interpreting a contract is to 'give effect to the mutual intention of the parties as it existed at the time of contracting.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting Cal. Civ. Code § 1636 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.")). "Next, and most importantly, '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'" *Id*. The contract is titled "Distributor Agreement," not a "sales agreement" or "purchase agreement." Additionally, Section 2.2 reads, "Distributor's appointment as a Distributor is conditioned on Distributor meeting and complying with the following obligations throughout the Term: (a) Distributor must purchase a minimum number of Products during the Term (the "Minimum Volume Commitment") as set forth in Exhibit A." Section 2.2 provides an explicit remedy for failing to meet the Minimum Volume Commitment: "If Distributor fails to comply with any of the foregoing obligations, Quanergy shall be entitled to terminate this Agreement immediately upon written notice to Distributor." Finally, reviewing the "whole of the contract" together to "give effect to every part," it is evident that the parties set forth the terms for a comprehensive manufacturer-distributor relationship in the Distributor Agreement, not merely a transaction for the Minimum Volume Commitment of $800,000.00.

10

The Court finds that the plain language of the Distributor Agreement does not create an express obligation for EOS to purchase $800,000.00 of products. EOS readily acknowledges that it did not make such a purchase. Therefore, Quanergy's remedy, per the plain language of the Distributor Agreement, is to terminate EOS's status as a distributor.

### 2. Whether the Parties Agreed to the Purchase Order

Although the Court has already found that the Agreement is a distributor agreement, and not a sales contract that requires EOS to purchase the Minimum Volume Commitment from Quanergy, the Court must still determine whether EOS's September 30, 2022 Purchase Order constituted an agreement between the parties such that EOS was obligated to complete the purchase. To resolve this issue, the Court need only turn to the plain language of the Distributor Agreement and Quanergy OldCo.'s own written statements.

Section 3.1 of the Distributor Agreement states, "Orders are not accepted, until Quanergy sends Distributor *a written order of acceptance* or actually delivers the ordered Products provided that delivery constitutes acceptance only to the extent Quanergy actually delivers the Products." Distributor Agreement, § 3.1 (emphasis added). It is undisputed that Quanergy OldCo. never provided EOS with a signed written order of acceptance or delivered the products in accordance with Section 3.1.

When EOS emailed Quanergy OldCo. regarding the Purchase Order (making an offer to purchase $416,898.00 of products), Quanergy OldCo. did not respond with an acceptance of the offer. Instead, Quanergy OldCo. said, "We will issue a corresponding SO which will require a signature due to the quantum." But there is no dispute that Quanergy OldCo. never provided a subsequent written acceptance to EOS. It was therefore reasonable and accurate for EOS to understand that its September 30, 2022 offer to purchase 50 sensors and software licenses had not yet been accepted, and would not be accepted until EOS received a signed sales order from Quanergy OldCo.

Quanergy asserts in its complaint that the Purchase Order was enforceable because it provided EOS with a sales order in response to the Purchase Order. *See* Compl., Ex. C. However, the sales order Quanergy attached as an exhibit to its complaint was not signed by either Quanergy

1  OldCo. or EOS. *Id*. Further, EOS says, "it conducted a thorough search of all the company's
2  emails and found no Sales Order from Quanergy OldCo." EOS MSJ at 14. Because Quanergy
3  OldCo. did not provide a written order of acceptance for EOS's Purchase Order as required by
4  Section 3.1 of the Distributor Agreement, Quanergy OldCo. never accepted the order, and EOS
5  validly rescinded its offer with its January 2023 Email.

      The Court GRANTS EOS's motion for summary judgment on Quanergy's claim of breach by repudiation of obligations under the Purchase Order, and DENIES Quanergy's cross-motion for summary judgment on the same issue.

### 3.   Whether Distributor Agreement has been Terminated

      Finally, the Court turns to whether the Distributor Agreement has been terminated. There is a wide gulf between the parties' positions: EOS says the Agreement terminated in January 2023, and Quanergy argues that it is still in place and will terminate in March 2026. While each party's position appears to be inconsistent with both the plain language of the Agreement and the communications between the parties, there is nevertheless a dispute of material fact that makes summary judgment on this issue improper.

      EOS asserts that its January 2023 email stating, "we are not confident in future business moving forward," constitutes an effective termination of the Distributor Agreement. EOS acknowledges that the only avenue it had to terminate the original term of the Distributor Agreement (which went through March 15, 2025), is set forth in section 8.2, which allows either party to terminate the agreement "for a material breach by the other Party that is not cured within thirty (30) days of written notice to the other Party." EOS points to no material breach by Quanergy and instead alludes only to a lack of confidence "in future business."

      In opposition, Quanergy agrees that EOS was only permitted to terminate the Agreement "for a material breach" by Quanergy if that breach was not cured within 30 days, and EOS failed to follow this protocol. Therefore, Quanergy argues, the Agreement is still in effect and EOS's continuing conduct promoting competitor products is in violation of the still valid Agreement.

      At the hearing, Quanergy's counsel stated that the Agreement was renewed by default for a one-year period and will expire in March 2026. In spite of commencing the current litigation, in

its motion for summary judgment Quanergy asserts that the Distributor Agreement renewed for a one-year term in March 2025 because "EOS has not provide [sic] a 'written notice of nonrenewal' at least sixty (60) days prior the expiration of the Initial Term." Quanergy MSJ at 18. Nor has Quanergy. The Court notes that, under Quanergy's logic in its written motion, without notice from either party, the Agreement should continue to renew in one-year terms in perpetuity; yet, although Quanergy did not point to any written notice of nonrenewal by either party since March 15, 2025, Quanergy's counsel, without explanation, maintained that the Agreement will terminate seven months from now.

There is a significant delta between the parties' positions, and a dispute of material fact as to whether the Distributor Agreement has been terminated. Neither party has pled sufficient facts to support their interpretation.

The Court notes there are troubling issues with this Distributor Agreement. Some of these issues were pointed out by EOS in its briefs and during oral argument, including the one-sidedness of the Agreement, including the termination clause and the challenges it imposed on EOS to terminate the Agreement during the initial term. However, it strains credulity to find that the single January 2023 Email EOS sent to Quanergy OldCo. constituted a clear intention to terminate the Agreement, let alone a termination that was in accordance with the termination clause of the Distributor Agreement. In fact, in the January 2023 Email, EOS indicates a willingness to continue working with Quanergy, stating: "until we have certainty in the auction/sale outcome, EOS will still continue to promote and quote the Quanergy solution to our system integrators within the electronic security market."

Conversely, it is also perplexing that Quanergy has concluded that the Agreement is still in place when: there has not been a single purchase since the parties signed the Agreement in 2022; there appears to have been no ongoing business relationship between the parties since approximately January 2023; and Quanergy sent EOS a demand letter and initiated this litigation two years ago.

The Court finds that there is a material dispute of fact as to whether the Distributor Agreement has been terminated, and if so, when that occurred. The Court therefore DENIES

13

1  summary judgment as to any of Quanergy's claims and EOS's affirmative defenses that rely upon
2  this argument.

### B.   Remaining Claims

EOS moves for summary judgment on the remainder of Quanergy's claims: two additional theories of breach of contract, intentional misrepresentation, negligent misrepresentation, violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, and unjust enrichment. Quanergy asks for summary judgment on EOS's 22 affirmative defenses.

Quanergy's additional breach of contract theories, intentional misrepresentation, and negligent misrepresentation claims require a determination of whether the Distributor Agreement has been terminated, and if so, when it was terminated; those are threshold issues that inform whether EOS breached its obligations to not sell competing products or failed to promote Quanergy's products, and if so, for how long EOS engaged in such activity. Whether the Agreement is still operative, and if not, when the Agreement was terminated, also informs the analysis of whether EOS made any misrepresentations in its January 2023 Email. The Court cannot assess liability or damages for these claims given the material dispute of fact. The Court DENIES EOS's motion for summary judgment on these claims.

In its California Business and Professions Code Section 17200 ("UCL") claim, Quanergy alleges that EOS "engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL by rejecting the Agreement and the Purchase Order despite applicable Bankruptcy law prohibiting cancellation of a contractual obligation due to a bankruptcy filing." Compl. ¶ 100. To the extent that the UCL claim relies on a theory of "rejecting" the Purchase Order, the Court GRANTS summary judgment in favor of EOS. As discussed above, there is no dispute of fact that Quanergy OldCo. never accepted the Purchase Order so it was not a valid agreement between the parties, thus Quanergy's assertion about a prohibition against cancellation of contracts during bankruptcy is inapplicable. Otherwise, to the extent Quanergy's UCL claim is based on the Agreement, because there is a dispute of material fact regarding termination, the Court DENIES summary judgment as to the UCL claim.

Regarding Quanergy's unjust enrichment claim, EOS moves for summary judgment on the

grounds that "California courts do not recognize unjust enrichment as a cause of action." EOS MSJ at 21. "California courts have taken different approaches on whether they should dismiss unjust enrichment "claims" on summary judgment." *Habr v. RxMapper, LLC*, No. 4:23-CV-2061-YGR, 2025 WL 235619, at *3 (N.D. Cal. Jan. 9, 2025) (collecting cases). "While California case law appears unsettled on the availability of such a cause of action, [the Ninth] Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("Under California law, unjust enrichment is an action in quasi-contract."). Here, however, quasi-contract claims are inapplicable because Quanergy is party to an express contract, and Quanergy argues the Distributor Agreement is still in force. *Gerlinger*, 311 F. Supp. 2d at 856 ("An action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties."). Quanergy's latter two breach of contract theories survive summary judgment, and Quanergy has contract damages available should it prevail. The Court GRANTS summary judgment in favor of EOS on the unjust enrichment claim.

### C. EOS's Affirmative Defenses

EOS brought 22 affirmative defenses to Quanergy's complaint. Quanergy moves for summary judgment for each of EOS's affirmative defenses. The parties each devote minimal space to their arguments about EOS's affirmative defenses and spar over whose burden it was to show that a genuine dispute of fact exists at this stage. EOS picks seven of its 22 affirmative defenses to expand upon, arguing that "EOS is obligated to establish its affirmative defenses only as to the claims on which Plaintiff moves for summary judgment." EOS Reply at 19. As discussed above, there are material disputes of fact that underlie Quanergy's remaining claims. The same is true for EOS's affirmative defenses. For the same reasons, the Court finds that there are material disputes of fact that preclude the Court from granting summary judgment, and DENIES Quanergy's motion.

### IV. MOTION TO STRIKE PLAINTIFF'S SUR-REPLY

On March 20, 2025, EOS filed a motion to strike Quanergy's reply to Quanergy's cross-

motion for summary judgment. EOS Mot. to Strike, ECF No. 81. Quanergy opposed, ECF No. 85, and EOS filed a reply, ECF No. 86.

EOS argues that Quanergy's Reply "is actually a sur-reply to EOS' Motion for Summary Judgment and repeats the same arguments Plaintiff made in its Opposition." EOS Mot. to Strike at 2. While the Court acknowledges that sur-replies require leave of the Court under the Civil Local Rules, here, Quanergy did not formally submit a sur-reply; Quanergy filed a reply that contains arguments that overlap with the content that EOS challenges. The Court finds that Quanergy's reply was not technically improper, and DENIES EOS's motion to strike.

### V. MOTION TO EXCLUDE EXPERT'S TESTIMONY

On June 27, 2025, EOS filed a motion to exclude testimony of two of Quanergy's experts. EOS Mot. to Exclude, ECF No. 92. Quanergy opposed, ECF No. 93, and EOS filed a reply, ECF No. 95.

EOS argues that Quanergy improperly designated its CEO, Enzo Signore, as its damages expert, and its counsel of record, Ely Goldin, Esq. as its expert to testify to any attorney's fees and costs incurred. EOS Mot. to Exclude at 1, 9. In its opposition, Quanergy explains that it "only filed expert disclosures for witnesses, whose testimony would otherwise be admissible, out of an abundance of caution and to prevent any accusation of unfair surprise." Quanergy Opp'n to EOS Mot. to Exclude at 1. Quanergy acknowledges that Mr. Signore's testimony is admissible as lay opinion testimony, and states that "Mr. Signore does not need to qualify as an expert to testify about Quanergy's damages which he has personal knowledge of as Chief Executive Officer." *Id*. at 5. The Court agrees. Second, Quanergy states that "Quanergy does not intend to proffer Mr. Goldin as a trial witness. Quanergy only disclosed him as a witness to give EOS maximum notice and avoid any accusations of unfair surprise." *Id*. at 10. The Court interprets Quanergy's representations as withdrawing Mr. Signore and Mr. Goldin as expert witnesses. Accordingly, the Court DENIES without prejudice EOS motion to exclude.

/ / /

/ / /

## VI. CONCLUSION

The Court GRANTS in part and DENIES in part EOS's motion for summary judgment and DENIES Quanergy's cross-motion for summary judgment. The Court DENIES EOS's motion to strike, and DENIES EOS's motion to exclude.

**IT IS SO ORDERED.**

Dated: September 9, 2025

_____
Noël Wise
United States District Judge